**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:10-CV-00096-JHM**

**MARSHALL D'ARMOND COLEMAN**                                         **PLAINTIFF**

**V.**

**RIVER VALLEY BEHAVIORAL HEALTH, INC.**                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment [DN 60]. Fully briefed, this matter is ripe for decision. For the following reasons, the motion is **GRANTED** in part and **RESERVED** in part.

**I. BACKGROUND**

On April 29, 2009, the Daviess Circuit Court granted Plaintiff Marshall Coleman's motion for shock probation. (Compl. [DN 1] 1.) Pursuant to the conditions of his shock probation, Plaintiff entered a residential drug treatment program at River Valley Behavioral Health ("River Valley") on July 15, 2009. (Dep. of Marshall D. Coleman [DN 60-3] 105–06.) As part of its treatment program, River Valley requires its clients to participate in group discussions and group therapy. (Reg'l Chem. Dependency Policies & Procedures Manual [DN 60-4] 4–7.)

Plaintiff suffers from Systemic Lupus Erythematosus, a serious form of lupus that affects his renal system. (Dep. [DN 60-3] 11.) Plaintiff has also been diagnosed with hypertension. (Compl. [DN 1] 2.) Upon Plaintiff's entry into the treatment program, River Valley was informed of these health problems and of Plaintiff's use of various prescription medications. (Dep. [DN 60-3] 66–67; River Valley Admis./Psychological Assessment & History Out Patient Adult Doc. [DN 66-2] 2.)

Plaintiff testified that when he arrived at River Valley, his blood pressure was above normal.

(Dep. [DN 60-3] 86–87.) He further testified that his hypertension worsened throughout his stay at River Valley, as River Valley failed to retrieve and administer the prescription medications that he needed to control his hypertension. According to Plaintiff, since he was under a court order to attend River Valley, he was at River Valley's mercy when it came to the retrieval and administration of his medications. (Id. at 43.) Plaintiff asserts that he had multiple conversations with River Valley's staff members about his immediate need for his medications. (Id. at 72–73.) He further asserts that River Valley's failure to retrieve and administer his medications led to his hospitalization. (Id. at 45–48.)

Additionally, Plaintiff testified that while he was enrolled at River Valley, he suffered from chronic fatigue due to the multiple medications he was taking. (Dep. [DN 60-3] 50–51.) On August 4, 2009, Plaintiff provided River Valley with a note from Dr. David Johnson, indicating that Plaintiff did not have control over his propensity to fall asleep and requesting that River Valley allow Plaintiff to take naps throughout the day. (Id. at 55–56, 58.) Plaintiff testified that he also spoke with River Valley's staff about taking naps during non-group hours, such as during the lunch break that clients take daily. (Id. at 50–55.) However, River Valley's policy states that its clients cannot sleep during the day. (Residential Chem. Dependency House Rules [DN 60-4] 80, ¶ 5.) Therefore, Plaintiff was not allowed to take any naps. (Dep. [DN 60-3] 50–55.) On August 5, 2009, Plaintiff was medically discharged from River Valley. (Compl. [DN 1] 2.) Ultimately, this discharge led to the revocation of Plaintiff's probation and the reinstatement of his sentence. (Id.; Dep. [DN 60-3] 25–29.)

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

### III. DISCUSSION

On July 19, 2010, Plaintiff sued River Valley, alleging that it negligently failed to retrieve and administer the prescription medications he needed to treat his medical conditions. (Compl. [DN 1] 2.) In his complaint, Plaintiff also alleges that River Valley failed to reasonably accommodate him, as required by the Americans with Disabilities Act, when it refused to let him take naps during non-group hours. (Id.) The Court will consider each claim in turn.

#### A. NEGLIGENCE

Plaintiff asserts a claim of negligence against River Valley for its alleged failure to retrieve

and administer his prescription medications. River Valley argues that the Court must grant summary judgment as to this issue, as Plaintiff has failed to offer an expert to support his claim of inadequate medical care.[1] Plaintiff counters that he has put forth sufficient effort investigating River Valley's negligence for his claim to survive this summary judgment motion. In this regard, Plaintiff highlights that he has consulted with the Human Rights Commission and other agencies involved in mental health and substance abuse programs with respect to whether River Valley breached the standard of care.[2] Further, Plaintiff maintains that his claim should survive this summary judgment motion because the doctrine of *res ipsa loquitur* applies and expert testimony is not needed.

Under Kentucky law, "most professional negligence claims require expert testimony, with the common exception being where the experience or common knowledge of laymen is extensive enough to recognize or to infer negligence from the facts." Celina Mut. Ins. Co. v. Harbor Ins. Agency, LLC, 332 S.W.3d 107 (Ky. App. 2010); accord Johnson v. Vaughn, 370 S.W.2d 591, 596 (Ky. 1963) (noting that questions of medical malpractice "must be established by medical or expert testimony unless the negligence and injurious results are so apparent that laymen with general knowledge would have no difficulty in recognizing it"). In other words, while expert testimony is generally required in professional negligence cases, it is not required in *res ipsa loquitur* cases,

---

[1] In support of its claim that Plaintiff has failed to offer an expert, River Valley cites Plaintiff's deposition testimony that he "didn't go to anyone outside besides the law books, besides the law" to determine whether River Valley breached the standard of care. (Dep. [60-3] 98–99.) River Valley also cites Plaintiff's responses to interrogatories, where he states that "[n]o one has expressed any opinion . . . regarding anything RVBHI did or didn't do on the days in question." (Pl.'s Resp. to Interrogs. & Produc. of Docs. by Def. [DN 60-6] 7, n.13.)

[2] In support of his claim that he sufficiently investigated River Valley's negligence, Plaintiff cites an e-mail that he sent to the Joint Commission in which he asked whether River Valley handled his situation pursuant to applicable standards. (See E-mail from Marshall Coleman to Joint Comm'n Dated Dec. 14, 2011 [DN 66-4] 1.)

4

where "the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it." Perkins v. Hausladen, 828 S.W.2d 652, 655–56 (Ky. 1992). According to River Valley, whether a residential drug treatment facility violated the proper standard of care toward its clients with respect to the retrieval and administration of prescription medications is outside the scope of a layman's experience or common knowledge. Therefore, expert testimony is required and Plaintiff's negligence claim must be dismissed.

In contrast, Plaintiff maintains that he does not need expert testimony because the taking of medications is part of a layman's common knowledge and because any juror could recognize that River Valley was negligent in its failure to provide Plaintiff with his medications. Kentucky law states that for *res ipsa loquitur* to apply, a plaintiff must prove that: "(1) the defendant had full control of the instrumentality which caused the injury; (2) the accident could not have happened if those having control had not been negligent; and (3) the plaintiff's injury resulted from the accident." Lewis v. C&C Enters., 2006 WL 73590 (Ky. App. Jan. 13, 2006) (citation omitted); accord Barnes v. Otis Elevator Co., 2 Fed. App'x 461, 467 (6th Cir. 2001). According to Plaintiff, these elements are satisfied here. Plaintiff argues that the instrumentality was under River Valley's control, as the facility controlled its clients' prescription medications. Plaintiff also argues that the circumstances create a clear inference of River Valley's negligence because Plaintiff was prescribed blood pressure medications and was not given them, causing his blood pressure to spike. Essentially, Plaintiff claims that from the spikes in his blood pressure, jurors evaluating the facts of this case could discern that River Valley was negligent in the retrieval and administration of his prescription medications.

The Court agrees with River Valley that the doctrine of *res ipsa loquitur* does not apply.

5

Even if the medications were under River Valley's control, the circumstances simply do not create a clear inference of River Valley's negligence. Instead, the Court finds that jurors would have much difficulty inferring River Valley's negligence from its control of medications and Plaintiff's rising blood pressure, as his blood pressure could have spiked for a variety of reasons, including Plaintiff's own failure to provide River Valley with his medications or his own failure to take the medications when they were given to him. Indeed, the facts are ill-suited for a *res ipsa loquitur* analysis. Contrary to Plaintiff's assertion, the issue here is not whether the public understands the importance of taking medications as prescribed. Instead, it is the proper standard of care that a drug treatment facility must exercise with regard to a client's medications. As to this issue, expert testimony is clearly needed.

A negligence action requires plaintiffs to show: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." Mullins v. Commonwealth Life Ins. Co., 839 S.W.2d 245, 247 (Ky.1992). In a professional negligence case, the burden of proof is generally on the plaintiff to establish the applicable standard of care and the breach thereof by expert testimony. See Green v. Owensboro Med. Health Sys., Inc., 231 S.W.3d 781, 783 (Ky. App. 2007); Vandevelde v. Poppens, 552 F. Supp. 2d 662, 668 (W.D. Ky. 2008). Here, Plaintiff has not shown that River Valley had a duty or to retrieve or administer his medications. Since most persons lack knowledge on a drug treatment facility's ability and responsibility to retrieve and administer medications, expert testimony is required. The Court notes that its conclusion is supported by the evidentiary rules, as Federal Rule of Evidence 702 provides that expert testimony is appropriate if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. Since the standard of care is not

within the scope of jurors' experience and knowledge, expert testimony would undoubtedly be helpful to the jury.

Since *res ipsa loquitur* does not apply, the Court must next determine whether River Valley is entitled to summary judgment because Plaintiff has not offered expert testimony. The Court finds that it is. In this regard, the Court recognizes that despite his investigation, Plaintiff does not suggest that he has found an expert to testify on the standard of care that River Valley should have followed. Moreover, the Court concludes that summary judgment must be granted under the Kentucky Supreme Court's decision of Blankenship v. Collier, 302 S.W.3d 665, 668 (Ky. 2010). In that case, the Kentucky Supreme Court outlined circumstances under which summary judgment may be granted in a medical malpractice action for failure to disclose a medical expert. Id. at 672–73. Specifically, the Court held that if the plaintiff creates a "legitimate dispute" about the need for an expert, the court must separately rule on that need before entertaining a motion for summary judgment; in other words, if the court concludes that expert testimony is required, it must "give the plaintiff a reasonable amount of time to identify an expert . . . ." Id. By contrast, the Court held that "if it would be unreasonable for the plaintiff to argue that an expert is not needed," there is "no reason for a trial court first to enter a separate ruling . . . before considering a defendant's summary judgment motion . . . ." Id. at 673.

In Blankenship, the Kentucky Supreme Court applied this criteria and concluded that the trial court did not abuse its discretion in deciding to rule on the summary judgment motion without first entering an order stating that experts were necessary. 302 S.W.3d at 672. In so doing, the Court found that the plaintiff never created a legitimate dispute about the need for expert testimony. Id. The Court highlighted that the plaintiff made affirmative representations to the trial court that he would be using

expert witnesses and only argued that he could meet his burden of proof without expert testimony after he was facing a summary judgment motion. According to the Court, this belated response, when considered in the context of the medical malpractice claims stated in his complaint, "simply did not create a legitimate dispute about the need for expert testimony." Id.

In the present case, the Court similarly finds that while Plaintiff did not affirmatively represent that he would use expert testimony, he did not have a reasonable basis on which to dispute the need for such testimony. Like the plaintiff in Blankenship, Plaintiff never suggested that he could prove his professional negligence claims without expert testimony until he responded to River Valley's motion for summary judgment. This belated suggestion, when viewed in light of Plaintiff's negligence allegations pertaining to medical care, simply does not create a legitimate dispute about the need for expert testimony. At this point, the Court wishes to note that approximately twenty-nine months have passed since this lawsuit was initiated and more than two months have passed since this summary judgment motion was filed. During this time, Plaintiff has asked various agencies whether River Valley violated the standard of care. (E-mail from Marshall Coleman to Joint Comm'n Dated Dec. 14, 2011 [DN 66-4].) Still, Plaintiff has not identified an expert. Summary judgment is appropriate.

The Court's conclusion is supported by the Kentucky Supreme Court's decision in Solinger v. Pearson, 2010 WL 1006072 (Ky. Mar. 18, 2010). There, the Court held that summary judgment was appropriate because "the motion [was] based on an actual failure of proof due to a complete lack of expert testimony, and not on a failure to meet a deadline due to an untimely disclosure." Id. at *6. The Court also held that "[i]f a reasonable amount of time expires and the plaintiff has still failed to file any expert disclosures . . . the trial court has the discretion to 'let the curtain fall' on a plaintiff's

claim by granting summary judgment for the defendants." Id. at *7 (citation omitted). Here, River Valley's motion was based on a failure of proof–not on a failure to meet a deadline. Since the Court believes that a reasonable amount of time has expired, it can properly grant River Valley's motion.

The Court's conclusion is also supported by Judge Thomas B. Russell's opinion in Romines v. Walkup, 2010 WL 411475 (W.D. Ky. Jan. 29, 2010). In that case, the Court granted summary judgment after the plaintiff failed to produce an expert witness, finding that the plaintiff failed to create a genuine dispute of material fact as to the defendants' duty and breach. Id. at *4. In so doing, the Court highlighted that the plaintiff could no longer supplement his responses because the time period for pretrial discovery and disclosure had expired. Also, the Court highlighted that the pretrial memoranda had been filed and Plaintiff failed to indicate an intention to call any expert or supply any facts that would establish a breach of a duty of care. Id. Similarly, in this case, the time period for pretrial discovery and disclosure has expired. (See Certification Prod. of Disclosure is Complete [DN 62].) Moreover, Plaintiff's pretrial memorandum fails to indicate an intention to use expert witnesses and fails to supply facts pertaining to the proper standard of care. (See Pre-Trial Mem. [DN 57].) Without expert testimony, Plaintiff cannot show that River Valley owed him a duty and cannot sustain his burden of proof. River Valley's motion for summary judgment on this issue must be **GRANTED**.

## B. AMERICANS WITH DISABILITIES ACT ("ADA")

In 1990, Congress enacted the ADA to provide a mandate for the elimination of discrimination against individuals with disabilities. See PGA Tour, Inc. v. Martin, 532 U.S. 661, 674–75 (2001). The ADA "forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public

accommodations (Title III)." Id. at 675 (footnotes omitted). Title III of the ADA, as a general rule, provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who. . . operates a place of public accommodation." 42 U.S.C. § 12182(a).

In this case, whether River Valley violated the ADA depends on a proper construction of the term "discrimination." Title III defines it to include "a failure to make reasonable modifications in policies, practices, or procedures" when the modifications are necessary to provide services to those with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii). An entity is **not** required to make modifications **if** it can "demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." Id. The Supreme Court has held that "an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration." Martin, 532 U.S. at 688.

River Valley argues that it was not required to modify its policy on sleeping since its treatment program would be fundamentally altered if individuals could complete it without participating in the group therapy sessions. (Mem. in Supp. of Mot. for Summ. J. [DN 60-1] 5.) According to River Valley, the group therapy sessions are an integral part of River Valley's program, and allowing individuals to complete the program without participating in them would "decrease the motivation of other clients, decrease the facility's authority, and fail to provide clients with the tools needed to overcome drug addiction." (Id. at 4–5.) In short, River Valley maintains that summary judgment is appropriate because rehabilitation services cannot be provided to those who are sleeping

and cannot progress. (Id. at 5; Video Dep. of Dennis Carpenter [DN 60-5] 12:00–12:29.)

Plaintiff disagrees with River Valley's analysis, maintaining that the specific modification of allowing a client to sleep **during non-group hours** would not work a fundamental alteration on River Valley. (Mem. in Resp. to Def.'s Mot. for Summ. J. [DN 66] 4–5.) Plaintiff highlights that the requested accommodation would have allowed him to take naps outside of the therapy sessions; thus, he could have participated in those sessions and satisfied the program's goals. According to Plaintiff, whether such an accommodation would have been reasonable under the circumstances, and whether it was necessary for Plaintiff, are genuine disputes of material fact for a jury to decide. (Id. at 5.)

In his complaint, Plaintiff requests that the Court issue a declaratory judgment stating that his rights were violated under the ADA. (Compl. [DN 1] 3.) Plaintiff also requests that the Court award him monetary damages. (Id.) The Court notes, however, that Congress provided no monetary damages remedy for violations of Title III of the ADA. See Smith v. Wal-Mart Stores, Inc., 167 F.3d 286, 293 (6th Cir. 1999); see also Mayberry v. Von Valtier, 843 F. Supp. 1160, 1167 (E.D. Mich. 1994); Dryer v. Flower Hosp., 383 F. Supp. 2d 934, 941–42 (N.D. Ohio 2005). Instead, the enforcement statute for Title III is 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a-3(a). Notably, that section does not include a provision for monetary damages unless the claim involves the Attorney General. See Smith, 167 F.3d at 293; see also 42 U.S.C. § 12188(b). Therefore, the Court requests that the parties file simultaneous briefs, **no later than February 1, 2013**, addressing the damages that Plaintiff seeks, and the extent to which he is entitled them, under Title III of the ADA. The Court also requests that the parties file responses **no later than February 11, 2013**. No replies will be filed. Upon receipt of the parties' briefs, the Court will rule on Plaintiff's ADA claim.

## IV. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that River Valley's Motion for Summary Judgment [DN 60] is **GRANTED** in part and **RESERVED** in part. It is **GRANTED** as to the negligence claim and **RESERVED** for further briefing as to the ADA claim.

                                                            Joseph H. McKinley, Jr., Chief Judge
                                                              United States District Court

January 22, 2013

cc: counsel of record